IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

O'NEIL RICHARD CLUE,

    Petitioner,

v.

DANIEL GREENWALT, et al.,

    Respondents.

CIVIL ACTION NO.: 5:21-cv-80

## ORDER AND REPORT AND RECOMMENDATION

Petitioner O'Neil Clue ("Clue"), who is currently housed at the Folkston Immigration and Customs Enforcement ("ICE") Processing Center in Folkston, Georgia, filed a 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus, through counsel.  Doc. 1.  Respondents filed a Response, and Clue filed a Reply and a copy of the Board of Immigration Appeals' ("BIA") remand order.  Docs. 6, 7, 10.  The Court conducted an evidentiary hearing on this matter on June 13, 2022.  Docs. 11, 12.  For the reasons which follow, I **RECOMMEND** the Court **GRANT** Clue's § 2241 Petition and **DIRECT** Respondents or other ICE officials to conduct a bond determination hearing for Clue as soon as practicable.  Additionally, I have considered Petitioner's representations in his Motion for Leave to File Supplement Evidence, and, therefore, **GRANT** this Motion.[1]  Doc. 13.

---

[1] Counsel filed this as a Consent Motion and titled it as an Unopposed Motion.  Doc. 13.  There is nothing in this Motion indicating Respondents have consented to or do not oppose the Motion.  Regardless, Respondents have not responded to the Motion, and the time to do so has expired.

**BACKGROUND**

Clue is a citizen of Jamaica. Doc. 6 at 3. Clue was admitted to the United States as a lawful permanent resident in 1992. Id. In 2006, Clue was convicted, after entry of a guilty plea in DeKalb County, Georgia, of armed robbery, kidnapping, theft, and false imprisonment and was sentenced to 17 years in prison. The Department of Homeland Security ("DHS") issued a notice to appear, charging Clue as removable in 2007, but these charges were administratively closed until after Clue was no longer in the custody of the State of Georgia. Clue entered ICE's custody on November 9, 2020. Id.

In his Petition, Clue asserts he has been in ICE's custody since November 9, 2020, without a bond hearing or other individualized review, resulting in his detention being unconstitutionally prolonged. Doc. 1 at 2. Clue argues he should be released immediately to avoid further unconstitutionally prolonged detention. In the alternative, Clue states this Court should order an individualized bond hearing where the Government has the burden of proving he is a flight risk or danger to the community. Id.

The Government argues Clue is subject to mandatory detention under 8 U.S.C. § 1226(c) and his detention does not violate due process; thus, his request for a bond hearing should be denied. Doc. 6 at 4, 8. In addition, the Government states even if Clue is entitled to a bond hearing, he should bear the burden of proof. Id. at 8.

Clue's counsel informed the Court the BIA remanded Clue's immigration case to the immigration judge for further proceedings on May 17, 2022. Doc. 10. Clue argues the remand is relevant to his § 2241 Petition because his "prolonged detention is unlikely to end in the near

future absent relief from this Court." Id. at 2. In addition, the immigration judge has issued an order on the remand on August 17, 2022, and Clue has filed an appeal. Doc. 13.

## DISCUSSION

Clue asserts his detention has become unconstitutionally prolonged under the factors set forth in Sopo v. U.S. Attorney General ("Sopo I"), 825 F.3d 1199 (11th Cir. 2016), *vacated*, 890 F.3d 952 (11th Cir. 2018). Doc. 1 at 13–18. Clue maintains the Sopo factors, as well as other circumstances, strongly favor him and the Court should grant him an individualized bond hearing. Id. at 18–21. Respondents state the balance of the Sopo factors do not "tip in Clue's favor." Doc. 6 at 8. According to Respondents, only one factor weighs in Clue's favor (length of detention) and the Court should deny his request for a bond hearing. Id.

Section 236(c) of the Immigration and Nationality Act, 8 U.S.C. § 1226, governs detention of certain aliens during removal proceedings. Jennings v. Rodriguez, 138 S. Ct. 830, 837 (2018). Relevant to this case, § 1226(a) sets out the default rule, which permits, but does not require, the Attorney General to detain an individual while removal proceedings are ongoing. Id. Section 1226(c), however, "carves out a statutory category of aliens who may *not* be released under § 1226(a)." Id. (emphasis in original). Specifically, § 1226(c) provides the Attorney General "shall take into custody any alien who—is deportable by reason of having committed any offense" involving moral turpitude, as defined in 8 U.S.C. § 1227(a)(2)(A)(ii). Thus, § 1226(a) provides for discretionary detention for aliens until removal proceedings are complete (as long as certain conditions are met), but § 1226(c) eliminates that discretion and imposes mandatory detention for certain aliens, in particular aliens who committed offenses involving

moral turpitude.[2] Section 1226(c) does not on its face set a time limit on the length of detention, but, instead, requires aliens be held until a final removal decision has been made.

> In fact, by allowing aliens to be released "only if" the Attorney General decides that certain conditions are met, § 1226(c) reinforces the conclusion that aliens detained under its authority are not entitled to be released under any circumstances other than those expressly recognized by the statute. And together with § 1226(a), § 1226(c) makes clear that detention of aliens within its scope must continue "pending a decision on whether the alien is to be removed from the United States."

Jennings, 138 S. Ct. at 846 (quoting § 1226(a)).

In terms of this Court's ability to review an immigration judge's detention decision, Congress has significantly curtailed the ability of detainees to seek judicial review of detention determinations under § 1226(a) and § 1226(c). As to discretionary detention under § 1226(a):

> The Attorney General's discretionary judgment regarding the application of [§ 1226] shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

8 U.S.C. § 1226(e). In other words, "§ 1226(e) precludes an alien from 'challeng[ing] a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding his detention or release'" in a habeas proceeding.[3] Jennings, 138 S. Ct. at 841 (2018) (quoting Demore v. Kim, 538 U.S. 510, 516 (2003)). Similarly, by statute, review of all questions of law and fact "arising from any action taken or proceeding brought to remove an alien from the United States under [Title 8, Chapter 12, Subchapter II of the United States Code]

---

[2] Section 1226(c)(2) provides for a narrow exception to mandatory detention for witness-protection purposes, but there is no indication the (c)(2) exception applies in Clue's case.

[3] This is not to say there is no review of detention determinations, only that judicial review is limited. Importantly, in cases where an alien is detained under § 1226(a), he can seek review of that detention with the Department of Homeland Security ("DHS") and then by an immigration judge and can "secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." Nielsen v. Preap, 139 S. Ct. 954, 960 (2019) (citing 8 C.F.R. §§ 236.1(c)(8), (d)(1), 1003.19(a), 1236.1(d), and then citing Matter of Guerra, 24 I. & N. Dec. 37 (BIA 2006)).

4

shall only be available in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9). The Supreme Court has indicated these limitations will prevent challenges to actual discretionary decisions to detain an alien or to seek removal of the alien or to any discretionary judgment, action, or decision but will not prevent challenges to the "statutory framework" that permits detention. Jennings, 138 S. Ct. at 839–41.

The record in this case demonstrates the immigration judge determined Clue was subject to mandatory detention under § 1226(c) due to his prior convictions. Clue, for his part, does not dispute he is subject to mandatory detention under § 1226(c) and does not argue any mistake of law or fact was made in determining he should be detained or that any request for a bond hearing was improperly denied. Rather, Clue asserts his detention has endured longer than is constitutionally permissible.

To the extent Clue asserts a facial due process challenge based on the length of his detention (i.e., a challenge to the statutory framework permitting his detention in this case), that challenge fails as a matter of law, as the Supreme Court has explicitly rejected any facial constitutional challenge based the duration or indefiniteness of detention under § 1226(a) and § 1226(c). Jennings, 138 S. Ct. at 842–52. Furthermore, to the extent Clue seeks to challenge any discretionary decision by an immigration judge related to his detention, he cannot do so here or at this time, given the limits of §§ 1226(e) and 1252(b)(9). Id.

However, Clue challenges the length of detention as violative of his right to procedural due process. It is well-established aliens present in the United States are entitled to Fifth Amendment due process protections in deportation proceedings. Reno v. Flores, 507 U.S. 292, 306 (1993). The United States Supreme Court has also recognized, however, "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." Demore

5

v. Kim, 538 U.S. 510, 523 (2003).  By statute, any alien who is inadmissible or deportable by reason of having committed certain enumerated criminal offenses after the alien has been released from criminal incarceration must be taken into and held in custody.  § 1226(c).  In Demore, the Supreme Court held § 1226(c) does not—on its face—violate the due process rights of criminal aliens who are detained for the limited period of their removal proceedings.  538 U.S. at 513.  However, the Court left open the possibility of as-applied procedural due process challenges to § 1226(c) detention, where continued detention becomes unreasonable or unjustified.  Id. at 531–33 (Kennedy, J., concurring).

In the years since Demore, many courts construed § 1226(c) as authorizing detention only for a "reasonable" amount time, so as to avoid resolving the constitutional challenges presented by extended § 1226(c) detention.  See Sopo I, 825 F.3d at 1213–14 (collecting cases and adopting similar construction of § 1226(c)), *vacated on other grounds*, 890 F.3d 952 (11th Cir. 2018).  However, in Jennings, the Supreme Court rejected this construction of § 1226(c), recognizing the statute requires mandatory detention of certain aliens until the conclusion of their removal proceedings and the provision cannot be construed to impose a "reasonableness" limitation.  138 S. Ct. at 841.  But, again, the Court left open the possibility of as-applied procedural due process challenges to § 1226(c) detention, particularly where the petitioner alleges the detention has become unreasonably prolonged.

To determine if a procedural due process violation has occurred, courts must determine whether a petitioner was deprived of a protected interest, and, if so, whether constitutionally adequate due process was afforded.  See Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982); Bank of Jackson Cnty. v. Cherry, 980 F.2d 1362, 1366 (11th Cir. 1993).  As for others protected by the Due Process Clause, for aliens involved in removal proceedings, "[f]reedom from

imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). Clue has plainly established a deprivation of his freedom from confinement. Therefore, to resolve Clue's Petition, the Court must determine whether he was afforded constitutionally adequate due process.

As noted above, § 1226(c) has been held to be facially constitutional, see generally Demore, and courts have deemed detention under that provision constitutional so long as the detention is justified and not unreasonably prolonged. Clue does not dispute he was validly subject to § 1226(c) detention based on his criminal history, but he does contend the detention—now lasting nearly 24 months—has been unreasonably prolonged. Courts in the Eleventh Circuit confronted with procedural due process challenges to prolonged detention under § 1226(c) have looked to Sopo I for guidance on evaluating the challenges. See Lukaj v. McAleenan, Case No. 3:19-cv-241, 2019 WL 4979745, at *6 (M.D. Fla. Oct. 8, 2019), *vacated on other grounds*, 2020 WL 248724 (M.D. Fla. Jan. 16, 2020); Moore v. Nielsen, No. 418CV01722, 2019 WL 2152582, at *10 (N.D. Ala. May 3, 2019). Those courts consider the reasoning of Sopo I concerning statutory construction of § 1226(c) and recognize the constitutional avoidance doctrine was rejected by the Supreme Court in Jennings and the opinion in Sopo I was later vacated by the Eleventh Circuit. Those courts also recognize the analysis in Sopo I concerning prolonged § 1226(c) detention remains persuasive and is particularly instructive when assessing the constitutionality of prolonged § 1226(c) detention. Lukaj, 2019 WL 4979745, at *6 (recognizing while "vacated opinions are void and have no legal effect[,]" "they can still have persuasive value"); Moore, 2019 WL 2152582, at *10 ("In assessing the constitutional avoidance doctrine, the Eleventh Circuit affirmatively answered the due process question in [Sopo I]."). The

7

undersigned agrees.  In applying the constitutional avoidance doctrine in Sopo I, the Eleventh Circuit construed § 1226(c) to include a limit that avoided unconstitutional application of the statute.  The same analysis is highly instructive as to determining if prolonged detention under § 1226(c) does, in fact, violate a petitioner's right to procedural due process.

In Sopo I, the Eleventh Circuit explained it is appropriate to use a case-by-case approach to determine whether an alien's detention under § 1226 is reasonable (as opposed to adopting any sort of bright-line rule concerning the length of the petitioner's detention).  825 F.3d at 1215.  In conducting the case-by-case evaluation, a court should consider, among other things: (1) the amount of time the alien has been in detention without a bond hearing; (2) the cause of the protracted removal proceedings (i.e., whether the petitioner or the government has improperly delayed the proceedings); (3) whether it will be possible to remove the alien upon the issuance of a final order of removal; (4) whether the period of civil immigration detention exceeds the time the alien spent in prison for the crime that rendered the alien removable; (5) whether the facility at which the alien is civilly detained is meaningfully different from a penal institution; and (6) the likelihood the removal proceedings will conclude in the near future.  Id. at 1217–18.  The Court addresses each factor, as applied to Clue's case.

I.      **Clue's Detention Without a Bond Hearing**

Regarding the first factor—the length of detention without a bond hearing—the Eleventh Circuit noted § 1226(c) detention without a bond hearing is likely reasonable for up to six months but "may often become unreasonable by the one year mark, depending on the facts of the case."  Id. at 1218.  Critically, the Eleventh Circuit explained in the context of prolonged § 1226(c) detention, procedural due process does not require automatic release of a criminal

alien once the detention is unreasonably prolonged but, instead, requires the government to afford the alien an individualized bond inquiry.  Id.

At the time of filing his Petition, Clue contended the length of his detention—13 months, or since November 9, 2020—was presumptively unreasonable.  Doc. 1 at 2, 13.  Respondents concede Clue had been detained, at the time of their Response, for more than a year and this factor is "indisputably in his favor."  Doc. 6 at 6.

Clue has been in detention without a bond hearing since at least November 9, 2020, and there is nothing before the Court indicating he has received a bond hearing.  Thus, as of the issuance of this Report, Clue has been in ICE's custody for nearly 24 months without a hearing or bond determination.  This period exceeds the presumptively reasonable period of 12 months.  This factor weighs in Clue's favor.

**II.     Delay in Proceedings**

According to Clue, his proceedings have been unreasonably delayed due to DHS' actions.  Doc. 1 at 16.  Specifically, Clue notes DHS began removal proceedings against him in 2007 and an immigration judge administratively closed the proceedings just months later.  After DHS gained custody of Clue in November 2020, Clue states he was in DHS' custody for almost three months' time before DHS moved to re-calendar his case.  Id.  Clue also states it took six months for the immigration judge to re-calendar the case and another two months after that to hold any sort of hearing.  Id. at 16–17.  Clue asserts he was not going to receive a decision on his removal until December 17, 2021, more than a year after he entered DHS' custody, if the hearing took place as scheduled.  Id. at 17.

Respondents note the immigration judge "granted additional time in order to serve the needs of both parties."  Doc. 6 at 6.  In addition, Respondents state the immigration judge did not

issue a written decision on Clue's deportation until 35 days after announcement or oral decision and Clue has filed motions for reconsideration.  Respondents assert none of the delays which have occurred in Clue's proceedings constitute improper delays by either party.  Id.

The undersigned concludes this factor is neutral.  While Clue's proceedings will continue in light of his appeal of the immigration judge's decision on the BIA's remand, this protraction cannot be assigned to either party.  In addition, neither party has acted in bad faith or with dilatory motives.

### III.   Possibility of Removal

The Government states DHS will process Clue's removal to Jamaica once the final order of removal is issued.  Doc 6 at 6.  Respondents note Clue is a native and citizen of Jamaica and his travel to Jamaica "presents no difficulties[.]"  Id.

Under this factor—whether it will be possible to remove Clue upon the issuance of a final order of removal—Clue offers nothing for the Court to weigh.  Thus, given Respondents' representations, it appears Clue will be removed to Jamaica fairly quickly and without issue, if and when a final order of removal is issued.  This factor weighs in Respondents' favor.

### IV.   Length of Civil Detention Relative to Length of Criminal Incarceration

Clue has been detained in ICE's custody since November 9, 2020, which is a period of nearly 24 months' time.  Doc. 1 at 2; Doc. 6 at 3.  Clue was most recently imprisoned for a period of 17 years with the Georgia Department of Corrections for armed robbery, kidnapping, and false imprisonment.  Doc. 6 at 6; Doc. 6-1 at 2, 6, 34, 57.  Because Clue's time in civil

detention is significantly less than the time he spent in federal custody, this factor weighs in Respondents' favor.[4]

### V.     Facility Conditions

Clue contends his detention at the Folkston ICE Facility is not meaningfully different from a penal institution or criminal detention.  Doc. 1 at 17.  Clue states this facility previously housed criminal detainees for the Bureau of Prisons, he must wear "prison garb," he sleeps in a cell with another individual, and he has his hands shackled to his waist when he is being transported throughout the facility.  Id. at 17.  Clue also states he was previously housed at the Irwin County Detention Center in Ocilla, Georgia, and that facility is "primarily a criminal detention center for the county, which lease[d] beds to ICE."  Id. at 17–18.  Clue offers sworn testimony in the form of a declaration to support his contentions.  Doc. 1-2.  Respondents argue Clue "provides no evidence to support a finding that his detention [at the Folkston ICE Processing Center] is as harsh or harsher than those at a prison."  Doc. 6 at 7.

On this record, I find Clue has shown his detention at the Folkston ICE Facility is not meaningfully different from a penal institution or criminal detention.[5]  While Clue's evidentiary support is sparse, consisting primarily of his own declaration, the evidence supports Clue's position.  Clue has shown the Folkston ICE Facility was previously a BOP facility used to house federal inmates.  Clue has also shown his movement is restricted in ways similar to those in criminal detention, his living conditions are similar, and even his permitted clothing is similar.

---

[4]     Respondents maintain Clue concedes this factor.  Doc. 6 at 6.  Unless this is a concession by omission, the Court may have overlooked Clue's concession.  Id. (citing Doc. 1 at 12).  Regardless, the factor weighs in Respondents' favor.

[5]     Respondents argue this Court found this factor to be neutral in similar circumstances in Lewis v. Greenwalt, Case No. 5:21-cv-45, ECF No. 20 (S.D. Ga. Feb. 3, 2022).  While Lewis did involve the same facility (the Folkston ICE Facility), the parties' evidentiary submissions in that case were different from the submissions here.  The Court must resolve Clue's Petition based on the record in this case.

11

Respondents offer no evidence showing the conditions at this ICE Facility are *less* harsh than a prison.[6] Based on this record, I find this factor favors Clue.

### VI.     Likelihood of Detention Concluding in Near Future

There is no indication Clue's immigration proceedings or his detention in the ICE Facility will conclude in the near future. This factor weighs in Clue's favor.

The BIA's remand order required the immigration judge to determine whether Clue's Georgia armed robbery conviction supports a charge of removability and whether armed robbery is a "crime of violence" under controlling law. Doc. 10-1 at 3–4. According to Clue, the immigration judge has issued an order on this remand and found armed robbery is categorically a crime of violence under controlling law. Doc. 13 at 1. Clue has filed an appeal of this order with the BIA. Id. There is nothing before the Court indicating how long the appellate process will take, but it is reasonable to assume the process could take several months or over a year. During the hearing before this Court, the Government agreed it could only speculate how long this process could take. Thus, this factor weighs in Clue's favor, as it is undetermined whether or when Clue will be ordered removed.

On balance, the Sopo factors indicate Clue is entitled to a bond determination hearing. Three of these factors weigh in Clue's favor, two factors weigh in Respondents' favor, and one is neutral. Based on these circumstances, Clue should have a bond hearing. Clue has been in ICE's custody for almost two years' time, and he has appealed the immigration judge's determination on remand. Accordingly, Clue's Petition is due to be granted, and Respondents

---

[6]     Respondents' counsel stated during the hearing the Folkston ICE Facility is a physically different facility than the penal institution which used to be next to it and there were no ICE detainees housed at the penal institution. This representation merely shows the facilities are separate, but it does not demonstrate they are meaningfully different.

should conduct an individualized bond inquiry.  This is not to say Clue is entitled to bond, only that he should have a bond determination hearing.[7]

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **GRANT** Clue's § 2241 Petition and **DIRECT** Respondents or other ICE officials to conduct a bond hearing as soon as practicable.  I **GRANT** Clue's Motion for Leave to File Supplemental Evidence, to the extent I considered the representations in this Motion.  Doc. 13.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

---

[7] Clue raises additional issues in his Petition: (1) DHS has repeatedly failed to abide by its rules and regulations intended to protect aliens' rights in removal proceedings; (2) his medical conditions place him at high risk to contract COVID-19; (3) he has shown rehabilitation efforts from his criminal youth; and (4) Respondents should bear the burden at the individualized bond hearing.  Doc. 1 at 18–22.  At this time, I decline to address these issues and decline to prescribe the relevant considerations and procedures of the required bond hearing.  The presiding immigration judge will need to resolve these issues as an initial matter.  That said, the Court notes at least one district court in this Circuit has determined a bond hearing conducted following a successful constitutional challenge to prolonged § 1226(c) detention should be conducted in accordance with the procedures outlined in 8 C.F.R. § 1236.1(c), the detainee would bear the burden of proof as to flight risk or dangerousness at the hearing, and an immigration presiding over that hearing may consider the detainee's ability to pay in some circumstances.  See J.N.C.G. v. Warden, Stewart Det. Ctr., Case No. 4:20-cv-62, 2020 WL 5046870, at *7 n.6 (M.D. Ga. Aug. 26, 2020).

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made herein.  Objections not meeting the specificity requirement set out above will not be considered by the District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 24th day of October, 2022.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA